UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FUMING WU, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-3690 |
| | § | |
| TEXAS A&M UNIVERSITY SYSTEM, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.       Introduction

Pending before the Court is the defendant's, Texas A&M University System, motion for summary judgment (Docket Entry No. 73).[1]  The *pro se* plaintiff, Fuming Wu, filed a response (Docket Entry No. 100).  The defendant filed a reply (Docket Entry No. 106), and the plaintiff filed a sur-reply (Docket Entry No. 108).  Also pending are the plaintiff's motions to strike various affidavits (Docket Entry Nos. 89, 93), to which the defendant collectively responded (Docket Entry No. 102).  After having carefully reviewed the motions, the responses, the record and the applicable law, the Court grants the defendant's motion for summary judgment and denies the plaintiff's motions to strike.[2]

### II.       Factual Background

This case concerns an employment discrimination and retaliation case under Title VII of the Civil Rights Act of 1964, arising from the plaintiff's former employment with the defendant

---

[1] The plaintiff originally asserted claims against other defendants, but the Court dismissed his claims against those defendants in an earlier Memorandum Opinion and Order (Docket Entry No. 30).

[2] The defendant also filed a motion (Docket Entry No. 88) for extension of time to file a reply to the plaintiff's response to the defendant's summary judgment motion.  Because the Court rules completely in the defendant's favor, it dismisses the defendant's motion for extension of time as moot.

as a non-tenured assistant professor.  In January 2006, the plaintiff began working for the public university defendant as a tenure-track assistant professor in the presently-named College of Arts and Sciences ("COAS") at the Texas A&M International University ("TAMIU") branch in Laredo, Texas.  His primary job duties were teaching, service and research, and his annual faculty evaluation summary forms and student evaluations assessed those responsibility areas.

As of the fall of 2007, his immediate supervisor was Dr. Rafic A. Bachnak, Chair of the plaintiff's department within the COAS.  Dr. Bachnak's managerial responsibilities include coordinating all of his department's class offerings and schedules.  On January 16, 2009, Dr. Thomas Mitchell became Dean of the COAS, thus supervising both Dr. Bachnak and the plaintiff.  As of August 2008, Dr. Pablo Arenaz became the Provost of TAMIU, thus supervising all persons relevant to this dispute.

In the fall of 2007, one or more students complained to Dr. Bachnak about the plaintiff's teaching approach.  Dr. Bachnak maintains that when he broached this issue with the plaintiff, the plaintiff became defensive and unprofessional and raised his voice.  In April 2008, the plaintiff inquired about sponsoring a visiting scholar from China.  Instead of raising the issue with his direct supervisor, the plaintiff first inquired with the Dean, who redirected him to Dr. Bachnak.  Dr. Bachnak informed him that the scholar needed to submit a proposal. Thereafter, the plaintiff did not keep Dr. Bachnak apprised of the status of the prospective visiting scholar when requested.  Ultimately, Dr. Bachnak recommended that the plaintiff's sponsorship request be denied.

In the fall of 2008, the plaintiff's students performed poorly on their college algebra midterm.  On December 6, 2008, TAMIU's college algebra professors administered a common exam to all college algebra students.  To make the common exam, each professor submitted five

questions to Dr. Bachnak for a total of a forty-question bank from which Dr. Bachnak then selected the twenty-five questions.  After the exam, the plaintiff learned that Dr. Oshima, another professor, provided a review session and practice problems for his students.  The plaintiff believed that those questions were improperly leaked because Dr. Bachnak selected three exam questions that were substantially similar to three of Dr. Oshima's review problems.  The plaintiff raised this issue with Dr. Bachnak, who determined that no improper leak occurred.  Nevertheless, the plaintiff continued to complain to Dr. Bachnak and to accuse Dr. Oshima in emails to Dr. Bachnak and in a public setting.

During the 2008-09 academic year, the plaintiff and two other faculty members were awarded research grants that included release time, allowing those professors to reduce their teaching loads by one course. Simultaneously, due to increased student enrollment, the plaintiff's department increased the number of lower level courses it offered.  Accordingly, Dr. Bachnak asked all three grant recipients to help the department meet its students' needs by taking their release time during the summer semester.  Only the plaintiff resisted Dr. Bachnak's request.

In January 2009, Dr. Bachnak and Dean Mitchell determined to not reappoint the plaintiff, ultimately citing his performance issues, insubordination, lack of collegiality with peers and subpar teaching performance.  Provost Arenaz approved the non-reappointment.  On January 30, 2009, the plaintiff received his non-reappointment notification, in which Dean Mitchell advised him that he would be terminated on May 31, 2010.  The plaintiff sought a meeting with Dr. Bachnak, Dean Mitchell and Provost Arenaz for the purported purpose of learning the "true reasons behind" the non-reappointment decision.  Pursuant to TAMIU policy, his supervisors declined to discuss the bases of their decision.

On April 1, 2009, the plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against the defendant based on, *inter alia*, Title VII race and national origin discrimination. He has proffered no official TAMIU policy or practice as proof of his suspicions, nor has he shown that any TAMIU employee made any discriminatory communication to him. On April 27, 2009, after the defendant had determined to not re-appoint the plaintiff, he received his 2008 evaluation, per his request. It listed that his teaching was unsatisfactory, noting multiple weaknesses. He appealed this evaluation to the University Grievance Committee ("UGC"), which found that he was unfairly evaluated in 2008, although it offered no rationale for its decision.

In February 2010, Dr. Bachnak appealed the UGC's decision to the President of TAMIU, Dr. Ray Keck. Dr. Keck reviewed the UGC report by considering all available documents and meeting with the UGC members. President Keck reversed the UGC's finding because "the negative elements in [Dr. Bachnak's] evaluation of the plaintiff were rooted in fact." The plaintiff's request that the Chancellor of the Texas A&M System review President Keck's decision was denied because no TAMIU or Texas A&M System policy or regulation provides for appeal beyond President Keck's decision.

On February 9, 2010, after Dr. Keck denied the plaintiff's other formal request to review his non-reappointment decision, the plaintiff amended his EEOC charge to include a Title VII retaliation claim. In July 2010, the EEOC dismissed both the retaliation and the underlying discrimination charges and issued to the plaintiff a notice of his right to sue.[3] The Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

---

[3] The plaintiff later attempted to "correct" multiple portions of his deposition testimony via an un-notarized errata sheet that he submitted to the Court Reporter. The Court does not consider those submitted changes as part of the record because the plaintiff failed to return his errata sheet notarized and within the thirty-day time period required by Federal Rule of Civil Procedure 30(e).

### III.    Contentions of the Parties

#### A.    The Defendant's Contentions

The defendant contends that the plaintiff's non-reappointment was based on legitimate, non-discriminatory business reasons, including insubordination, lack of collegiality with his peers and subpar teaching performance. It avers that the plaintiff fails to establish a *prima facie* case of Title VII disparate treatment because he cannot show that it treated any similarly-situated employee outside of his protected class more favorably than himself. It maintains that the plaintiff fails to identify a neutral employment policy or practice that disparately impacted him. It claims that his *prima facie* retaliation case fails because his 2008 performance evaluation was not an adverse action, was not caused by his filing a discrimination charge, and that he has not shown that its proffered reasons for his performance review were pretextual. Regarding the plaintiff's motions to strike,[4] the defendant claims that the plaintiff's allegations go to the weight of the evidence rather than to its admissibility.  The defendant argues that any alleged hearsay is not offered for the truth of the matter asserted, and that the statements in the contested affidavits are supported by facts.

#### B.    The Plaintiff's Contentions

The plaintiff contends that the defendant discriminated against him by not renewing his professorship appointment.  He also maintains that the defendant retaliated against his complaints of alleged discrimination by giving him a negative performance evaluation.  He asserts claims for Title VII for race and national origin discrimination and retaliation.  He claims that a faculty member told him that Provost Arenaz made two racially discriminatory remarks at different TAMIU meetings, stating that: (1) there are too many Chinese and Indian faculty

---

[4] The plaintiff has moved to strike the affidavits of Drs. Arenaz, Bachnak and Mitchell.

members; and (2) he would not hire those whose names he did not know how to pronounce.[5]
The plaintiff speculates that Provost Arenaz was trying to change the faculty portfolio to match
the student population by reducing the number of Asian or Pacific Islander faculty and increasing
the number of Hispanic faculty. Regarding his motions to strike, the plaintiff claims that the
contested affidavits contain hearsay, omissions, false statements, and reckless attacks.

## IV.     Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who
fails to make a sufficient showing of the existence of an element essential to that party's case and
on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322
(1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The movant
bears the initial burden of "informing the Court of the basis of its motion" and identifying those
portions of the record "which it believes demonstrate the absence of a genuine issue of material
fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th
Cir. 2003).   Summary judgment is appropriate if "the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no genuine issue as to any material fact
and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the
pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v.
Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951,
954 (5th Cir. 1995); *Little*, 37 F.3d at 1075).   "To meet this burden, the nonmovant must
'identify specific evidence in the record and articulate the 'precise manner' in which that
evidence support[s] [its] claim[s].'"  *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d

---

[5] The plaintiff admits that he did not witness the alleged comments, and Provost Arenaz denies having made such comments.

1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)).  The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted).  Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'"  *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted).  When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]."  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).  Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).  Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses."  *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380).  Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The plaintiff in this case has not filed a response to the defendant's motion for summary judgment. According to this Court's local rules, responses to motions are due within twenty-one days unless the time is extended. S.D. Tex. L.R. 7.3. A failure to respond is "taken as a representation of no opposition." S.D. Tex L.R. 7.4. Notwithstanding the plaintiff's failure to file a response, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). To this end, the defendant, as "[t]he movant[,] has the burden of establishing the absence of a genuine issue of material fact and, unless [it] has done so, the court may not the motion, regardless of whether any response was filed." *See Hetzel*, 50 F.3d at 362 n.3. Nevertheless, in determining whether summary judgment is appropriate, a district court may accept as undisputed the facts set forth in the motion. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (internal citations omitted).

## V.   Analysis and Discussion

The Court grants the defendant's motion in its entirety because the plaintiff has failed to prove that the defendant violated Title VII in any way. The Court also denies the plaintiff's motions to strike.

### A.   Motion for Summary Judgment

#### 1.   Disparate Treatment Discrimination

The Court grants the defendant's motion regarding the plaintiff's disparate treatment claim. Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his

> compensation, terms, conditions, or privileges of employment, because of such
> individual's race . . . or national origin.

42 U.S.C. § 2000e-2(a)(1). In employment discrimination cases such as the one *sub judice*, a plaintiff can prove Title VII discrimination "through direct or circumstantial evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

In cases where the plaintiff produces no direct evidence[6] of discriminatory intent,[7] the Court must evaluate proof of circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *see also Turner*, 476 F.3d at 345 (citing *Rutherford v. Harris County*, 197 F.3d 173, 179-80 (5th Cir. 1999)).

The plaintiff presents no direct evidence of discrimination. The closest he comes to offering any "evidence" of unlawful discrimination is an unsupported conversation he had with another faculty member that is inadmissible hearsay. *See Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (a district court may not properly consider hearsay affidavits or depositions) (citing Fed. R. Civ. P. 56(e)). The plaintiff does not maintain that anyone at TAMIU ever made a discriminatory remark directly to him based on race or national origin. Rather, his only claim is that a fellow employee relayed two discriminatory remarks purportedly made by Provost Arenaz outside the plaintiff's presence.

---

[6] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

[7] In his response to the defendant's motion for summary judgment, the plaintiff proffers Dr. Chan-Han Sung, a Chinese employee of the defendant, as an employee whose career trajectory serves as an example of the defendant's discriminatory intent. The Court finds the plaintiff's alleged evidence concerning Dr. Sung insufficient to support his argument.

His unsupported speculation, unsubstantiated assertions, and inadmissible hearsay evidence does not defeat a summary judgment motion. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (internal citation omitted); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (internal citations omitted).

Further, even assuming *arguendo* that Provost Arenaz's purported discriminatory comments were competent summary judgment evidence, they would still not amount to direct evidence that the plaintiff suffered unlawful discrimination. There is no evidence that Provost Arenaz initiated or influenced the decision not to reappoint the plaintiff. Provost Arenaz merely approved the determination made by those who worked more closely with the plaintiff. Because the plaintiff lacks any direct evidence of discrimination, the Court applies the *McDonnell Douglas* framework to the plaintiff's claim.

> Under the *McDonnell Douglas* burden-shifting framework:
>
> [A] plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden . . . the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (internal quotations omitted); *see also Turner*, 476 F.3d at 345 (internal citations omitted); *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (internal citations omitted). "Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff.'"  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Thus, "a plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that race was a determinative factor in the actions of which plaintiff complains."  *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996)).

Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate a *prima facie* case of discrimination, which, in turn, creates a rebuttable presumption of unlawful discrimination by the employer.  *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (citing *Burdine*, 450 U.S. at 255).  To establish a *prima facie* case of race discrimination under Title VII, a plaintiff must demonstrate that: "(1) [he] belongs to a protected group; (2) [he] was qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) . . . in the case of disparate treatment, that similarly situated employees were treated more favorably."  *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).

The plaintiff identifies only one purported similarly situated person whom he alleges was treated more favorably than him: Dr. Chappa-Leiva, an assistant professor of mathematics employed by TAMIU. However, the plaintiff has offered insufficient competent evidence to demonstrate that Dr. Chappa-Leiva is similarly situated to the plaintiff, because he has not shown that Dr. Chappa-Leiva was given favorable treatment under "nearly identical" circumstances.

*Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) (quoting *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1980) (*per curiam*)).

The evidence reveals numerous differences between the two professors that vitiate any contention that they are similarly situated.  The plaintiff and Dr. Chappa-Leiva held different positions with different responsibilities.  They taught different subjects, for a different number of years, and they were at different pay grades.  Moreover, even if the plaintiff could establish a *prima facie* claim, TAMIU's determination not to reappoint him was based on legitimate, nondiscriminatory business reasons of the plaintiff's subpar teaching, lack of collegiality and insubordination.  The defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."  *Burdine*, 450 U.S. at 257.

Nor has the plaintiff shown that the defendant's reasons for non-reappointment were pretextual.  Once the defendant in an employment discrimination case offers a legitimate, nondiscriminatory reason for its action, the plaintiff must produce evidence that the defendant's proffered reason is actually a pretext for discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993) (internal citation omitted).  "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"  *Laxton v. Gap*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace*, 271 F.3d at 220).  "[T]o rebut a defendant's showing of legitimate, nondiscriminatory reasons for its actions, '[i]t is not enough . . . to *dis* believe the employer.'"  *Warren v. City of Tupelo Mississippi*, 332 Fed. Appx. 176, 181 (5th Cir. 2009) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)).  Rather, "the factfinder must *believe* the plaintiff's explanation of intentional discrimination."  *Warren*, 332 Fed. Appx. at 181 (quoting *St. Mary's Honor Ctr.*,

509 at 519).  "The Supreme Court clarified in *Reeves* that, to meet this burden, 'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'"  *Levias v. Texas Dep't of Criminal Justice*, 352 F. Supp.2d 751, 769 (S.D. Tex. 2004) (quoting *Reeves*, 530 U.S. at 148).

"This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability."  *Reeves*, 530 U.S. at 148.  "For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory, reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  *Id.* (internal citation omitted).

The plaintiff has made no such showing.  He does not dispute that he continued to press his concerns regarding possible leaked test questions after Dr. Bachnak determined that there was no improper leak.  He admits that he and Dr. Bachnak disagreed about when Dr. Bachnak should schedule the plaintiff's classes.  He admits that Dr. Bachnak approached him regarding a student complaint about his teaching in the fall of 2008.  The plaintiff even referred to his 2008 college algebra class as "the worst situation" of teaching algebra in his career in terms of student performance.  Nor does he dispute that he sought to take his grant release during a teacher shortage rather than when Dr. Bachnak asked him to schedule it. Also, he ignored his supervisor's directions regarding making arrangements for a potential exchange scholar.

Regardless of any teaching awards or nominations earlier in his career, the summary judgment evidence does not dispel the view that the plaintiff's performance decreased markedly

in 2008, and "[m]erely disagreeing with an employer's negative performance assessment is insufficient to show pretext." *Perez v. Region 20 Educ. Service Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002) (internal citation omitted). Rather, the contested evaluation, made after the non-reappointment determination, only memorializes the legitimate, nondiscriminatory business reasons for the plaintiff's non-reappointment, and it is substantiated by other evidence in the record. Thus, the Court grants the defendant's motion on the plaintiff's disparate treatment discrimination claim.

### 2.    Disparate Impact Discrimination

The Court grants the defendant's motion regarding the plaintiff's possible disparate impact discrimination because he does not identify any neutral employment policy or practice that disparately impacts him. The plaintiff alleges, without sufficient evidence, that the defendant has an unlawful employment policy of reducing the number of Asian faulty and increasing the number of Hispanic faculty to his detriment.

Disparate impact claims concern "facially neutral employment practices that create such statistical disparities disadvantaging members of a protected group that they are 'functionally equivalent to intentional discrimination.'" *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988)). To establish a *prima facie* case of discrimination by disparate impact, "a plaintiff must: (1) identify the challenged employment practice or policy, and pinpoint the defendant's use of it; (2) demonstrate a disparate impact on a protected group [under] Title VII; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. *Gonzalez v. City of New Braunfels, Tex.*, 176 F.3d 834, 839 n.26 (5th Cir. 1999) (emphasis omitted). A mere bottom-line showing of racial imbalance is insufficient to establish a *prima facie* case of disparate impact; rather, the

plaintiff must "demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989) (overruled on other grounds).

The plaintiff's nebulous reference to "an employment 'strategy' that aims to change the faculty portfolio to match that of the student population" would constitute purposeful discriminatory conduct, not a neutral policy necessary to allege a disparate impact claim. However, the plaintiff has failed to identify any particular practice or policy of the defendant that would cause a disparate impact. Accordingly, the Court grants the defendant's motion on this issue.

### 3.    Retaliation

The Court grants the defendant's motion regarding the plaintiff's retaliation claim because he cannot establish a *prima facie* case that he suffered an adverse employment action prompted by his protected conduct. To establish a *prima facie* case of Title VII retaliation, "a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (internal citation omitted). The statute defines "protected activity" as opposition to any practice rendered unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Summary judgment is appropriate if the plaintiff is unable to satisfy any of the aforementioned three elements. *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001)).

To constitute an adverse employment action in the context of a Title VII retaliation claim, the challenged employment action "must be 'materially adverse,' [or] one that would 'dissuade[ ]

a reasonable worker from making or supporting a charge of discrimination.'" *Stewart*, 586 F.3d at 331 (quoting *Burlington Northern and Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Stewart*, 586 F.3d at 331 (quoting *Burlington*, 548 U.S. at 68).

For purposes of retaliation, an adverse employment action need not amount to an "ultimate" employment decision such as hiring, firing, or demotion, but extends to any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). However, the Court finds that the plaintiff has not shown that he suffered an adverse employment action *as a result* of filing formal charges against the defendants. While he alleges Title VII discrimination charges, he has not shown that any discrimination occurred specifically because he complained of discrimination or filed EEOC charges against the defendant.

To establish the causation element, the plaintiff must present either direct or circumstantial evidence that creates a rebuttable presumption of retaliation. *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007) (internal citation omitted). Where, as here, the plaintiff presents solely circumstantial evidence of retaliation, the *McDonnell Douglas* framework applies. *Dick v. J.B. Hunt Transport, Inc.*, 772 F. Supp. 2d 806, 815 (N.D. Tex. 2011).

The plaintiff's alleged adverse employment action, receiving an unsatisfactory 2008 performance evaluation, occurred three months after the defendant determined that he would not be reappointed. Thus, it is impossible that this evaluation could have been Title VII retaliation, because it would not dissuade a reasonable worker from making or supporting a charge of

discrimination." *McCoy*, 492 F.3d at 559.  Therefore, this purported adverse employment action does not rise to the level of an adverse employment action needed to establish retaliation under Title VII.  *Burlington Northern*, 548 U.S. at 68.

The plaintiff's retaliation claim also fails because he cannot establish the necessary causal connection between his allegations of engaging in a protected activity and suffering an adverse employment action.  He merely guesses that his negative performance evaluation was retaliatory, and yet he would not have received a performance review, had he not insisted – after already knowing that he was not being reappointed – on obtaining a review.  Therefore, the cause of the review was the plaintiff's insistence on its receipt, not his previously filing a charge of discrimination.  Regardless, the record is replete with legitimate, nondiscriminatory business reasons that the plaintiff's 2008 evaluation was negative.  Therefore, he has not established a *prima facie* case of retaliation, and the Court grants the defendant's summary judgment motion on this issue.

Nor can the plaintiff show that the defendant's reasons for his negative performance review were a pretext for retaliation.  Even if the plaintiff had established his *prima facie* case of retaliation, the defendant has offered legitimate, nondiscriminatory reasons for its negative evaluation of him.  If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate legitimate, non-discriminatory reasons for their adverse employment actions.  The defendant's burden at this stage "is one of production, not persuasion . . . [and] can involve no credibility assessment."  *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (quoting *Reeves*, 530 U.S. at 142).  To this end, the defendant "need only articulate a lawful reason, regardless of what its persuasiveness may or may not be."  *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).

Because the defendant has offered sufficient evidence of the plaintiff's unsatisfactory work performance – which earlier in the year led to the defendant's decision not to renew the plaintiff's appointment – the burden reverts to the plaintiff to show pretext. *Strong v. Univ. Healthcare Sys.*, 482 F.3d 802, 806 (5th Cir. 2007).   "Merely disagreeing with an employer's negative performance assessment is insufficient to show pretext." *Perez v. Region 20 Educ. Service Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002).

The plaintiff alleges, without evidence, that the defendant's administration members conspired to manipulate his evaluation results.   Claims of retaliation premised on "mere speculation" cannot survive summary judgment. *Septimus*, 399 F.3d at 611.   Moreover, the evaluation happened after his alleged adverse employment action occurred, hence the evaluation could not have caused that adverse action.   Therefore, the Court grants the defendant's motion on this issue for this additional reason.

### B.      Motions to Strike

The Court denies the plaintiff's motions to strike.   Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Federal Rule of Civil Procedure 56(c)(4) provides that a supporting affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."   "Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment." *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992).   Accordingly, the Court does not consider any affidavit that does not comply with Federal Rule of Civil Procedure 56(e)(1).   See *E.E.O.C. v. Air Liquide USA, LLC*, 692 F.

Supp. 2d 658, 666 (S.D. Tex. 2010).  However, none of the plaintiff's allegations offers sufficient grounds for striking the affidavits used to support the defendant's motion for summary judgment.

Regarding the allegedly false, misleading or conclusory statements to which the plaintiff claims Drs. Arenaz, Bachnak and Mitchell attested, Rule 56(c) expressly contemplates that affidavits may be used to support a summary judgment motion.  The facts contained in those affidavits may be tested by citing to other evidence establishing that genuine issues of material fact exist.  Whether the factual statements in the affidavits are false, is an objection to the weight they should be given, not their admissibility.  *Escalante v. Clinton*, 386 Fed. Appx. 493, 498 (5th Cir. 2010) (internal citation omitted).

Regarding the alleged hearsay statements in the contested affidavits, the defendant expressly disclaims that those statements are offered for the truth of the matters asserted.  Furthermore, a statement is not hearsay if it demonstrates a witness' then-existing state of mind.  Fed. R. Evid. 803(3).  The alleged hearsay statements establish the affiants' understanding of the facts presented to them and show the basis relied upon to not renew the plaintiff's appointment.  Thus, the Court denies the plaintiff's motions to strike.

**VI.    Conclusion**

Based on the foregoing discussion, the Court GRANTS the defendant's motion for summary judgment, and DENIES the plaintiff's motions to strike.

It is so **ORDERED**.

SIGNED at Houston, Texas this 8th day of December, 2011.

_____
Kenneth M. Hoyt
United States District Judge